IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CR-00108-M-RJ

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| MUWSAY IBN IBRAHIM TULU, | |
| Defendant. | |

This matter comes before the court are Defendant's pro se Motion for Judgement of Acquittal pursuant to Federal Rule of Criminal Procedure 29 [DE 130], Motion for Extension of Time to File Reply [DE 148], Motion to Transfer Case [DE 147], and Motion for Evidentiary Hearing [DE 150]. For the following reasons, each motion is denied.

## I. Procedural History

On March 27, 2024, Defendant was charged in an indictment with one count of possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1) and 924; one count of possessing with the intent to distribute Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1); one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) and 924; and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). DE 1. On May 6, 2025, a superseding indictment was filed that brought two additional charges of possessing with the intent to distribute Schedule II controlled substances and possessing a firearm in furtherance of a drug trafficking crime. DE 69.

On July 23, 2025, Defendant pled guilty to possessing ammunition, as alleged in Count One, and not guilty to the remaining five charges. DE 91. After a two-day trial, a jury found

Defendant guilty on all counts. DE 122. On September 12, 2025, Defendant filed a timely motion for judgment of acquittal. DE 130.

## II. Motion for Judgement of Acquittal

### A. Legal Standards

"A defendant may move for a judgment of acquittal . . . within fourteen days after a guilty verdict." Fed. R. Crim. P. 29(c)(1). Once a jury returns a guilty verdict, "the court may set aside the verdict and enter an acquittal" if the court concludes that the evidence presented at trial is insufficient to sustain a conviction. *United States of Am. v. Freitekh*, 114 F.4th 292, 308 (4th Cir. 2024) (quoting Fed. R. Crim. P. 29(c)(2)).

When considering a motion under Rule 29, "a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Hall*, 396 F.2d 841, 844 (4th Cir. 1968) (citation omitted). A jury's verdict must be sustained "if, when the evidence is viewed in the light most favorable to the Government, 'the conviction is supported by substantial evidence.'" *United States v. Lunsford*, 629 F. App'x 518, 519 (4th Cir. 2015) (quoting *United States v. Hickman*, 626 F.3d 756, 762–63 (4th Cir. 2010)). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Freitekh*, 114 F.4th at 308 (quoting *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). "Thus, a defendant who challenges the sufficiency of the evidence 'bears a heavy burden.'" *Id.*

B.  Discussion

Defendant contends that the United States did not present evidence at trial sufficient to establish beyond a reasonable doubt that he committed the offenses alleged in Counts Two, Three, Five, and Six of the Superseding Indictment. *Id.* at 1, 4. As to each count, the court disagrees.

1. *Drug Possession Charges*

Counts Two and Five of the Superseding Indictment charge Defendant with knowingly and intentionally possessing with the intent to distribute Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1). DE 69 at 1–2. Count Two charges Defendant with possessing with the intent to distribute quantities of cocaine and fentanyl on July 13, 2023. *Id.* at 1. Count Five charges Defendant with possessing with the intent to distribute twenty-eight grams or more of cocaine base ("crack") and a quantity of cocaine on October 18, 2023.

To convict a defendant under § 841(a)(1), the government must prove that (1) the defendant possessed a controlled substance; (2) knowingly; and (3) with the intent to distribute. *United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005). "Possession may be actual or constructive, and it may be sole or joint." *United States v. Moody*, 2 F.4th 180, 189 (4th Cir. 2021) (cleaned up). A theory of constructive possession requires a showing of "ownership, dominion, or control over the contraband and knowledge of the presence of the contraband." *Id.* (quoting *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010). And while "[i]t is not sufficient for a defendant to simply be present where drugs are found," *id.* at 190, constructive possession may be proved by circumstantial evidence, after considering "the totality of the circumstances surrounding the defendant's arrest and his alleged possession." *Herder*, 594 F.3d at 358. To show that possession was "knowing," the government must "establish that the defendant knew he was dealing with 'a controlled substance.'" *McFadden v. United States*, 576 U.S. 186, 188–89 (2015); *see also United*

3

*States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013) (holding that § 841(a) requires "specific intent to distribute *a controlled substance*," whether or not he had knowledge of the precise controlled substance at issue).

For both counts, Defendant argues that the government failed to establish that he had the intent to distribute controlled substances.[1] DE 130 at 1, 3. Specifically, he argues that without evidence of a drug transaction, the quantity of the drugs at issue is insufficient to elevate his conduct beyond simple possession. *Id.* This argument misunderstands the law. When considering intent, "a jury can look to circumstantial evidence such as the quantity of drugs, the presence of drug-packaging supplies, large amounts of cash, and the presence of firearms." *Moody*, 2 F.4th at 190. "Intent to distribute may be inferred from possession of . . . a quantity of drugs larger than needed for personal use." *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990) (citation omitted). Evidence of a transaction (or a planned transaction) is not required. *See id.*

In this case, the government presented evidence that narcotics were seized on July 13, 2023, from Defendant's car, and on October 18, 2023, from a residence shared by Defendant and Ayonna Marshall. Investigator Treshawn Singleton testified that during the July 13 seizure, law enforcement recovered a plastic bag containing 8.66 grams of fentanyl, a black plastic bag containing 2.18 grams of cocaine and 13 bindles[2] of fentanyl, a plastic bag containing 7.25 grams of cocaine, a measuring cup with cocaine residue, and a loaded Polymer 80 9mm handgun with an extended magazine containing 31 rounds of ammunition. Trial Trans. DE 133 at 139:16–151:22. ATF Special Agent Joseph Davieau testified that during the October 18 seizure, law enforcement

---

[1] Defendant does not contest that he possessed Schedule II controlled substances in the amounts alleged in the Superseding Indictment or that his possession was knowing. *See* DE 130.

[2] ATF Task Force Officer Kevin Perry gave unrebutted testimony that a "bindle" contains an individual dosage unit of fentanyl. DE 134 at 241:1–5.

4

recovered two plastic bags containing a total of 12.07 grams of cocaine, eleven plastic bags containing a total of 28.72 grams of cocaine base (crack), and a digital scale—all of which was found in Defendant's kitchen. *Id.* at 161:10–162:2. Officers also seized a loaded Taurus G2 9mm pistol from inside a hamper in the bedroom. *Id.* at 170:24–171:10. Defendant stipulated to the identity and weight of the above-described drugs, *id.* at 18:7–19:9; 130:9–21, and the court heard expert testimony from ATF Task Force Officer Kevin Perry that the average dosage unit of these substances is 0.02 grams of fentanyl, 0.2 grams of cocaine, and between 0.1 and 0.2 grams of cocaine base (crack). Trial Trans. DE 134 at 235:20–237:12. These estimates were unrebutted.

Taking this evidence in a light most favorable to the government, the court finds that substantial evidence supported the jury's finding that Defendant possessed Scheule II controlled substances with the intent to distribute. Using the individual dosage units provided by Officer Perry, Defendant possessed 446 units of fentanyl and 47.15 units of cocaine on July 13, 2023. On October 13, 2023, he possessed 60.35 units of cocaine and 143.6 units of cocaine base (crack).[3] The quantity of drugs in Defendant's possession as to both counts significantly exceeded "a quantity . . . needed for personal use," and in both instances, the drugs were found in close physical proximity to a loaded firearm and drug paraphernalia. *See Fisher*, 912 F.2d at 730. Considering these circumstances in tandem, the jury had sufficient evidence to infer an intent to distribute. *See, e.g., United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996) (finding that 5.72 grams of crack was consistent with an intent to distribute). The motion is denied as to Counts Two and Five.

---

[3] In calculating the number of individual dosage units of cocaine base (crack), the court used a conservative estimate of 0.2 grams.

2. *§ 924(c) Charges*

Counts Three and Six of the Superseding Indictment charge Defendant with knowingly possessing a firearm in furtherance of the drug trafficking crimes alleged in Counts Two and Five, in violation of 18 U.S.C. § 924(c)(1)(A)(i). DE 69 at 2.

Section 924(c) provides in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years.

§ 924(c)(1)(A)(i). This directive "driv[es] at a simple point: whether there exists a sufficiently close nexus between . . . firearms and . . . drugs to conclude that possession of the firearms was 'in furtherance of' drug trafficking." *United States v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014). To show that a firearm was possessed "in furtherance of" drug trafficking, the government "must prove that the firearm ha[d] 'some purpose or effect with respect to the drug trafficking crime.'" *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)). Put another way, the possession of the firearm must have "furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). "A mere accidental or coincidental presence of a gun is not enough to satisfy this requirement; but, if its purpose is to protect or embolden the defendant, the statue is satisfied." *United States v. Sullivan*, 455 F.3d 248, 260 (4th Cir. 2006) (Widener, J., concurring in part) (citing *Lipford*, 203 F.3d at 266).

Defendant argues that without evidence that he "actively employed the firearm during and in relation to the predicate" drug trafficking offenses, DE 130 at 3, "the government failed to

6

demonstrate a nexus between" the presence of drugs and his possession of firearms.[4] DE 151 at 17. Specifically, he argues that mere evidence of a firearm's "proximity and accessibility" to drugs is insufficient as a matter of law to support a conviction under § 924(c).[5] DE 130 at 3. As has already been explained, that is wrong. Other provisions within § 924(c), which are not at issue in this case, prescribe higher penalties when a firearm is "brandished" or "discharged" in furtherance of a drug trafficking crime *See* § 924(c)(1)(A)(ii)–(iii). It is a separate crime—and the one Defendant was twice convicted of committing— to "possess[]" a firearm for the same purpose. § 924(c)(1)(A)(i). To sustain its burden as to that offense, the government must show only that the possession "furthered, advanced, or helped forward a drug trafficking crime." *Lomax*, 293 F.3d at 705. In making that determination, juries can consider "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Penniegraft*, 641 F.3d 566, 574 (4th Cir. 2011) (quoting *United States v. Perry*, F.3d 246, 254 (4th Cir. 2009)).

Here, the government presented the following evidence concerning the two seized firearms. Investigator Treshawn Singleton testified that on July 13, 2024, while searching Defendant's car,

---

[4] Defendant does not contest that he possessed the firearms. *See* DE 130, 151.
[5] For support, Defendant cites to several cases interpreting a prior version of § 924(c), which did not regulate the possession of firearms. In interpreting that statute, the Supreme Court held that "[t]o sustain a conviction under the 'use' prong . . . the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Bailey v. United States*, 516 U.S. 137, 150 (1995). Three years later, in what was colloquially known as the "Bailey Fix Act," Congress abrogated *Bailey* by amending the statute to cover possession as well as use. *See* § 924(c)(1)(A); *O'Brien*, 560 U.S. at 233 (recognizing that *Bailey* had be abrogated); *Welch v. United States*, 578 U.S. 120, 133 (2016) (same).

7

law enforcement found a Polymer 80 9mm handgun with an extended magazine containing 31 rounds of ammunition on the driver-side floorboard. DE 133 at 148:8–150:22; *see also* Gov's Ex. 11B (a picture of the firearm with the extended magazine on the driver's side floorboard). The firearm was fully loaded with a bullet in the chamber. DE 133 at 150:4–6. Law enforcement recovered a second magazine with thirteen .40 caliber bullets in the center console. *Id.* at 150:23–151:22; *see also* Gov's Ex. 14B (a picture of the magazine in the console); 15 (a picture of the magazine and the bullets laid out on a table). As detailed previously, also in the vehicle were distribution amounts of fentanyl and cocaine as well as a measuring cup coated with cocaine residue. DE 133 at 139:16–147:4. Similar items were found during the October 18, 2023, search of Defendant's residence. There, law enforcement found a loaded Taurus Model G2 9mm pistol within the hamper of the residence's bedroom. *Id.* at 157:6–9; 171:2–4. They additionally found an unloaded 9mm magazine, distribution quantities of cocaine and cocaine base (crack), and a digital scale in the kitchen. *Id.* at 161:13–168:3.

After considering the "circumstances under which the gun[s were] found," the court finds that substantial evidence supported the jury's verdict. *See Penniegraft*, 641 F.3d at 574. In both instances, the firearms were found in close physical proximity to distribution-quantities of narcotics, drug paraphernalia, and spare ammunition. They were both loaded and readily accessible to Defendant moments before he was encountered by police. The jury, as the fact finder, was "entitled to come to the common-sense conclusion" that because Defendant was found with "both drugs and a firearm" near his person, "the gun [was] present to further drug trafficking." *Lomax*, 293 F.3d at 706 (holding that substantial evidence supported a § 924(c) conviction where a defendant was found with nineteen dosage units of crack cocaine and a 9mm pistol). The motion is denied as to Counts Three and Six.

### III. Motion for Evidentiary Hearing

Defendant also moves for an evidentiary hearing pursuant to the Supreme Court's decision in *Smith v. Phillips*, 455 U.S. 209 (1982). DE 150. He accuses the court of "systematically excluding minorities" from its membership and alleges that "racial bias played a [role] in the verdict." *Id.* at 1. He argues that because there was not a black individual on the jury that convicted him, it could not have been impartial. *Id.*

The Supreme Court has recognized that, typically, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. 209, 215 (1982). That "does not mean that a court is obliged to hold an evidentiary hearing any time that a defendant alleges juror bias[.]" *Billings v. Polk*, 441 F.3d 238, 245 (4th Cir. 2006). The necessity of a hearing depends on the nature of the allegations. When a defendant has made a credible claim that a jury member was in possession of "extraneous prejudicial information" or was otherwise affected by "an outside influence," a "thorough judicial inquiry" is necessary. *Barnes v. Joyner*, 751 F.3d 229, 245–46 (4th Cir. 2014) (quoting *Robinson v. Polk*, 438 F.3d 350, 363 (4th Cir. 2006) and *Wolfe v. Johnson*, 565 F.3d 140, 161 (4th Cir. 2009)). "[N]o such obligation is imposed with regard to an internal jury influence." *Barnes*, 751 F.3d at 246 (quoting *Wolfe*, 565 F.3d at 161). "[T]he proper tool for examining an intrinsic influence like juror bias is voir dire." *Porter v. Gilmore*, 479 F. Supp. 3d 252, 280 (E.D. Va. 2020) (cleaned up) (quoting *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998)).

Defendant has put forward no evidence whatsoever (or even made an allegation) that a particular member of the jury was affected by an external influence. Instead, he assumes that because he was tried by an all-white jury, the verdict was inherently biased. That claim has no basis in law. "[A] defendant has no right to a petit jury composed in whole or in part of persons

9

of his own race." *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (internal quotations omitted). Because Defendant's claim of bias rests solely on a theory of "intrinsic influences," his request for a *Smith* hearing is unjustified. *See Porter*, 479 F. Supp. 3d at 280.

In any event, Defendant bears sole responsibility for the lack of black members on the jury. A description of the jury selection process used in this case is necessary to understand why. The court used a modified version of the Arizona struck method to select a jury. To begin, the Clerk of the Court created a table listing the members of the venire. After excusing two jurors for cause (Jurors 9 and 24), the Clerk identified the first thirty-one prospective jurors remaining on the list. These were the prospective jurors on whom the parties could exercise their peremptory challenges. Once voir dire was completed, the court took a recess to allow the parties determine which prospective jurors they would challenge. The Defendant had ten peremptory challenges; the government had six. Upon reconvening, the court permitted the parties to exercise their challenges. Taking turns, each party was given the opportunity to exercise one challenge or "pass" on each member of the pool. Challenges could not be saved—when it is their turn, a challenge had to be exercised or waived. Once the government had exercised or waived its sixth peremptory challenge, the Defendant was given the opportunity to exercise or waive his remaining peremptory challenges. After all challenges had been exercised or waived, the court identified the first fourteen prospective jurors remaining on the list to seat twelve jurors and two alternate jurors.

In this case, of the thirty-one members of the potential jury pool, three were black: Jurors 18, 23, and 26. The government exercised two of its peremptory challenges to strike Jurors 18 and 26 from the jury pool. Defendant, who represented himself *pro se*, used only five of his ten peremptory challenges, and he did not challenge Juror 23, so a black juror remained in the pool. After all peremptory challenges had been exercised or waived, of the individuals remaining on the

10

list, the first fourteen were Jurors 2, 3, 4, 5, 6, 7, 11, 12, 14, 15, 16, 19, 20, and 21. Those fourteen individuals constituted the twelve jurors and two alternates in this case. The court asked the parties whether they had any objection to the makeup of the jury. DE 133 at 95:1–3. Defendant responded, "No objection, Your Honor." *Id.* at 95:4. The jury was then called to sit in the jury box, and the court asked, once again, whether Defendant was satisfied with the composition of the jury. *Id.* at 96:12–13. In plain view of all fourteen jurors, he responded, "Yes, sir, Your Honor." *Id.* at 96:14.

Defendant's use of his peremptory challenges—or more appropriately, his decision not to use them—resulted in Juror 23's exclusion from the jury. Had Defendant exercised two more of his remaining peremptory challenges, Juror 23 would have been an alternate juror. Had he used four more of his remaining challenges, Juror 23 would have been a voting member. But he did not. His failure to exercise his peremptory challenges in a manner that would have resulted in the inclusion of a black juror does not now necessitate a hearing. He has presented no evidence that the United States exercised its peremptory challenges to target black members of the venire, and he has identified no basis on which to conclude that any member of the jury had improper bias.

For these reasons, his motion is denied.

### IV. Motion to Transfer Case

Finally, Defendant moves pursuant to Rule 20 of the Federal Rules of Criminal Procedure to transfer his criminal case in the Middle District of North Carolina to this district for the purpose of sentencing. DE 147. Under certain circumstances, Rule 20 permits a prosecution to be transferred "from the district where the indictment or information is pending . . . to the district where the defendant is arrested, held or present[.]" Fed. R. Crim. P. 20(a). Motions under this rule must, however, be filed in the district where the indictment was filed, and the United States

11

Attorneys in both districts must approve of the transfer in writing. *Id.* Neither of those conditions are met here, so the motion is denied.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal [DE 130], Motion for Transfer [DE 147], and Motion for Evidentiary Hearing [DE 150] are DENIED. Defendant's Motion for Extension of Time to File Reply [DE 148] is DENIED AS MOOT.

SO ORDERED this 18th day of December, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE